**No. 25-2574**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

MEMPHIS STREET ACADEMY:
CHARTER SCHOOL AT J.P. JONES,
*et al*,
Plaintiffs/Appellants,
v.
SCHOOL DISTRICT OF PHILADELPHIA,
Defendant/Appellee.

**MOTION OF PLAINTIFF/APPELLANT MEMPHIS STREET ACADEMY CHARTER SCHOOL AT J.P. JONES ET AL, TO CERTIFY QUESTIONS OF STATE LAW TO THE SUPREME COURT OF PENNSYLVANIA**

Plaintiff/Appellant Memphis Street Academy Charter School at J.P. Jones et al., respectfully moves this Court to certify the following novel and important questions of Pennsylvania law to the Supreme Court of Pennsylvania pursuant to Local Appellate Rule 110.1 and Pennsylvania Rule of Appellate Procedure 3341[1]:

1. Whether, under Pennsylvania's Charter School Law, a charter school authorizer in a school district of the first class possesses legislative authority to execute a charter agreement that materially differs from the original charter

[1] *See* Pa. Supreme Ct. Internal Operating Procedures § 8 (petitions for certification to be accepted or denied within 60 days)

developed pursuant to 24 P.S. § 17-1720-A, where the new agreement (1) purports to supersede the prior charter granted through the procedures set forth in 24 P.S. § 17-1717-A, and (2) is adopted without compliance with the procedural requirements of 24 P.S. § 17-1717-A and § 17-1720-A for the development of charter agreements.

2. Whether claims brought under Article I, Section 29 of the Pennsylvania Constitution are coextensive with claims brought under the Equal Protection Clause of the Fourteenth Amendment, such that they are evaluated under the same means–end analysis and tiers of scrutiny applied in federal equal protection jurisprudence.

3. Whether, if Section 29 is coextensive with federal equal protection, a racial discrimination claim challenging a facially neutral policy that would not violate federal equal protection likewise fails under Section 29.

4. Whether, under Article III, Section 14 of the Pennsylvania Constitution, a local school district, rather than solely the General Assembly, can violate the Education Clause by adopting or implementing policies that deprive certain students or schools of equal access to a thorough and efficient system of public education.

These questions are central to the statutory and constitutional framework governing Pennsylvania's charter schools and equal protection guarantees, and their resolution will directly determine the outcome of this appeal.

## **ARGUMENT**

This Court's Local Appellate Rule 110.1 authorizes certification of questions of state law to the Pennsylvania Supreme Court when those questions will control the outcome of a pending appeal. As the United States Supreme Court

has recognized, certification "save[s] time, energy, and resources, and helps build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). The decision to certify rests within this Court's sound discretion.

The Pennsylvania Supreme Court has likewise prescribed the standards for accepting certified questions from federal courts. Under Pennsylvania Rule of Appellate Procedure 3341(c), certification is appropriate where "special and important reasons" exist, including when:

> (1) the question of law is one of first impression and of such substantial public importance as to require prompt and definitive resolution by the Supreme Court;
>
> (2) the question of law has produced conflicting decisions in other courts; or
>
> (3) the question of law concerns an unsettled issue involving the constitutionality, construction, or application of a statute of this Commonwealth.

The Court accepts certification only where the material facts are undisputed and the question presented has not previously been decided. *See* Pa.R.A.P. 3341(c). The record below is complete, and all facts material to the certified questions are undisputed. Each of these conditions is satisfied here; this case presents multiple unsettled questions of Pennsylvania law that are both novel and outcome-determinative.

The District Court's opinions in this matter confirm that these issues remain unresolved under Pennsylvania law. In its November 2022 and July 2025

memoranda, the District Court acknowledged the absence of any Pennsylvania precedent interpreting Article I, Section 29, and expressly applied "only the federal equal-protection framework" in evaluating Appellants' state-constitutional claims (ECF No. 105 at 47 (Mem. Op., E.D. Pa. July 2025, Kenney, J.)). The Court likewise accepted, without guidance from any Pennsylvania authority, the School District's longstanding practice of negotiating materially new "renewal" charters containing surrender and integration clauses, despite the Charter School Law's silence on such authority (ECF No. 30 at 2–4 (Mem. Op., E.D. Pa. Nov. 2022, Kenney, J.)). Those findings demonstrate that the controlling questions of law in this appeal, the scope of legislative authority under the Charter School Law and the proper interpretive framework for Section 29, remain unresolved by Pennsylvania's appellate courts. Certification will therefore permit the Pennsylvania Supreme Court to decide these issues in the first instance, ensuring uniformity and fidelity to state law.

In the proceedings below, Appellants challenged the School District of Philadelphia's use of a facially neutral evaluation framework for Philadelphia public charter schools, alleging that the framework has a racially discriminatory effect. As set forth in the Complaint, Appellants asserted claims under both Title VI of the Civil Rights Act of 1964 and Article I, Section 29 of the Pennsylvania

Constitution. The District Court granted summary judgment to Appellee, rejecting the Title VI claim and, as to Section 29, concluding:

> Applying only the federal equal-protection framework, rather than assuming that Section 29 is substantively co-extensive with Section 26 and its federal counterpart … the Court still holds Plaintiffs' claims under Section 29 fail as a matter of law for the same reasons articulated for the claims under Title VI.

ECF No. 105 at 47.

In doing so, the District Court treated Section 29 as functionally equivalent to the federal Equal Protection Clause, a question that remains unsettled under Pennsylvania law and thus warrants certification to the Supreme Court of Pennsylvania.

The District Court itself recognized the absence of Pennsylvania authority interpreting Article I, Section 29. In fact, the Court's prior decisions appear to be the only federal cases to reference Section 29, and Appellants are aware of only one Pennsylvania decision that mentioned Section 29 (in dicta), suggesting that such a claim might not be barred by res judicata merely because a prior equal-protection claim had been dismissed. A recent Commonwealth Court of Pennsylvania opinion does directly bear on Article I, Section 29 of the Pennsylvania Constitution. *See Conference of Presidents of Major Italian Am. Orgs., Inc. v. City of Phila.*, 2025 Pa. Commw. LEXIS 136 (Commw. Ct. Aug. 6, 2025). There, the trial court dismissed all counts on *res judicata* and collateral

estoppel grounds, holding that the claims mirrored those already rejected in federal court. *Id*. at *7–8. On appeal, however, the Commonwealth Court reversed in part, noting:

> Although we do not address the remaining grounds relied upon by the trial court for dismissing the Complaint, we nevertheless note that, as to *res judicata*, the District Court in the Federal Action explicitly dismissed Appellants' state law claims[2] without prejudice so that they could be raised in the trial court. We further note that, in essence, **Appellants' equal protection and related claims are based on article I, section 29 of the Pennsylvania Constitution, not article I, section 26.** The former has yet to be authoritatively interpreted by Pennsylvania courts, and equal protection claims brought under it **are not necessarily analyzed in parallel fashion to claims asserted under the Fourteenth Amendment to the United States Constitution.**

*Id*. at 25, n. 21 (emphasis added)

This observation is highly significant. The Commonwealth Court recognized that Section 29 has not been authoritatively construed and may not track the federal Equal Protection Clause, which is exactly what Plaintiffs extensively briefed. Had the court believed Section 29 claims were identical to the Federal claims, and would result in the same determination, it would not have provided

---

[2] The state law claims before that Federal court did not include a claim under Article I, Section 29 of the Pennsylvania Constitution. *See* Conference of Presidents of Maj. Italian Am. Orgs., Inc. v. City of Phila., No. 21-1609, 2022 U.S. Dist. LEXIS 5819, at *26 (E.D. Pa. Jan. 12, 2022).

such commentary pertaining to *res judicata*. Instead, it underscored the need for independent analysis of Section 29.

Since Section 29 was adopted by Pennsylvania voters in 2021, no Pennsylvania appellate court has squarely addressed what substantive protections the provision affords, whether it is analyzed under the same means-end framework as federal equal protection, or whether claims under Section 29 may diverge in result from their federal counterparts. Accordingly, this issue presents a question of first impression and one that this Court has not previously decided, satisfying Rule 3341(c)(1).

Although Pennsylvania courts have developed general principles for interpreting the Commonwealth's Constitution, the analysis becomes especially nuanced when, as here, the provision at issue has no federal analogue. Article I, Section 29 was newly adopted and stands on its own textual footing, unmoored from any corresponding clause in the United States Constitution. The questions presented, therefore, raise important matters of state governance that only the Pennsylvania Supreme Court can definitively resolve, as their answer will determine the scope of the discrimination protections that millions of Pennsylvanians voted to enact. To date, no party in any reported case has asked the Pennsylvania courts to articulate the analytical framework for evaluating

claims under Section 29, and the Pennsylvania Supreme Court has not had occasion to consider it.

Appellants further contend that Pennsylvania law afforded Appellees no authority to execute the 2018 Charter and that the document is therefore *void ab initio*. Under the plain language of the Charter School Law, 24 P.S. §§ 17-1714-A through 17-1732-A, a charter school authorizer's powers are expressly limited to renewing, not renewing, or revoking an existing charter. *See* 24 P.S. § 17-1729-A. Despite this limited grant of authority, for more than a decade charter school authorizers have purported to "renew" charters by issuing new agreements that contain materially different terms and conditions from those originally granted through the procedures set forth in § 17-1717-A. Such agreements cannot properly be characterized as renewals. As this Court has recognized, a "renewal" occurs only when a contract "is either the same or nearly the same as the [prior agreement]." *Indian Harbor Ins. Co. v. F & M Equip., Ltd*., 804 F.3d 310, 315 (3d Cir. 2015). Indeed, these so-called "renewed" charter agreements often, as in this case, contain integration clauses expressly stating that they "supersede all prior agreements." A charter agreement that wholly supersedes its predecessor and alters its substantive terms cannot constitute a renewal or amendment of the existing charter; it is, in effect, a new charter developed outside the procedures mandated by § 17-1717-A.

Although sound policy considerations might suggest that the Charter School Law should permit authorizers to issue "renewed" charters containing modified terms from those developed under 24 P.S. § 17-1720-A, the Pennsylvania Supreme Court has made clear that policy cannot expand statutory authority. In *Discovery Charter School v. School District of Philadelphia*, 641 Pa. 136, 153, 166 A.3d 304, 311 (2017), the Pennsylvania Supreme Court rejected similar reasoning, explaining that:

> [R]egardless of the policy reasons supporting the Commonwealth Court's charter amendment process, [the School District of Philadelphia] argue[s] that the court cannot, under its power of statutory construction, supply omissions in a statute. [The District] emphasize[d] that policymaking is an exercise in legislation, and not statutory interpretation.

In *Discovery*, the Pennsylvania Supreme Court held that statutory interpretation must give effect to the General Assembly's text, not to long-standing practice or perceived policy convenience. To date, neither the Pennsylvania Supreme Court nor the Commonwealth Court has addressed whether a charter authorizer may issue a materially new "renewal" agreement without complying with § 1717-A's procedures.

Accordingly, Appellants' questions present significant issues of state governance that are best resolved by the Pennsylvania Supreme Court. These include: (i) the scope of legislative authority granted to charter school authorizers

within Pennsylvania's school districts; (ii) the proper analytical framework for evaluating equal-protection claims brought under Article I, Section 29 of the Pennsylvania Constitution; and (iii) whether, under Article III, Section 14 of the Pennsylvania Constitution (the "Education Clause"), individual school districts may themselves violate that provision through the adoption or implementation of novel policies or practices.

Certification will also advance judicial efficiency and uniformity in the application of Pennsylvania's Charter School Law. At least one related state-court action presently includes claims alleging violations of Article I, Section 29, *Conference of Presidents of Major Italian Am. Orgs., Inc. v. City of Phila.*, 2025 Pa. Commw. LEXIS 136 (Commw. Ct. Aug. 6, 2025)[3]. A decision by this Court would be precedential but not binding in that litigation, whereas a ruling by the Pennsylvania Supreme Court on the certified questions would resolve the issues with finality in both cases. Certification would further promote consistency and

[3] The District Court refused to consider disparate impact protections under Section 29, reasoning that "the majority in Allegheny Reproductive Health Center did not do so in the context of Section 28." Jul. 2025 Memorandum, ECF No. 105 at 48, n. 28, JA 28 at 75, n. 28. This reasoning is flawed. The Pennsylvania Supreme Court did not need to reach the disparate impact issue in Allegheny Reproductive Health Center because it resolved the case on other grounds, applying strict scrutiny to the sex-based classification. The majority's silence on disparate impact does not constitute a rejection of that theory; it simply reflects that the Court did not need to reach that far in its analysis. The District Court's refusal to consider disparate impact based on the majority's silence is therefore error.

predictability in charter-school governance statewide, providing authoritative guidance to both authorizers and charter schools regarding the scope of their respective statutory powers and constitutional obligations.

If this Court were to decline certification and instead predict how the Pennsylvania Supreme Court might resolve these unsettled questions, any future state-court litigation would proceed independently through the Pennsylvania appellate process and to judgment. Certifying these questions now would allow the Pennsylvania Supreme Court to address these important issues of state law and policy in the first instance, avoiding potentially erroneous federal predictions that could confuse rather than clarify the governing standards. *See Kendrick v. District Attorney of Philadelphia County*, 488 F.3d 217, 219 n.1 (3d Cir. 2007) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)) ("Certification does, in the long run, save time, energy, and resources, and helps build a cooperative judicial federalism.").

## CONCLUSION

For the reasons set forth above, the Motion to Certify Questions of Law to the Pennsylvania Supreme Court should be granted.

## EXHIBITS TO MOTION TO CERTIFY QUESTIONS OF STATE LAW

Appellants submit the following exhibits in support of their Motion to Certify Questions of State Law to the Supreme Court of Pennsylvania. These

materials are drawn from the District Court record and are provided for the Court's convenience in reviewing the issues discussed in this Motion:

| Exhibit | Description | Source / Citation |
|---|---|---|
| **Exhibit A** | Excerpt from *Memorandum and Opinion*, *Memphis Street Academy Charter School at J.P. Jones v. School District of Philadelphia*, No. 2:21-cv-01609 (E.D. Pa. July 2025) (Kenney, J.) – pages discussing Article I, Section 29 and federal equal-protection framework. | ECF No. 105, at 45–47 |
| **Exhibit B** | Excerpt from *Memorandum and Opinion*, *Memphis Street Academy Charter School at J.P. Jones v. School District of Philadelphia*, No. 2:21-cv-01609 (E.D. Pa. Nov. 2022) (Kenney, J.) – portions describing the 2018 Charter and renewal process. | ECF No. 30, at 2–5 |

Respectfully Submitted,

/s/ David Annecharico
David Annecharico, Esq.
Sand & Saidel, P.C.
113 South 21 Street
Philadelphia, PA 19103
(215) 851-0200
dannecharico@sandsaidel.com
Counsel for Appellants,
Memphis Street Academy Charter School at J.P. Jones, et al.

Dated: November 12, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2025, I electronically filed the foregoing documents with the Clerk of the Court using the ECF system which will send notification of such filing to the other parties' ECF-registered counsel.

/s/ David Annecharico
David Annecharico, Esq.
Sand & Saidel, P.C.
113 South 21 Street
Philadelphia, PA 19103
(215) 851-0200
dannecharico@sandsaidel.com
Counsel for Appellants,
Memphis Street Academy Charter School at J.P. Jones, et al.

**EXHIBIT A**

---

Memorandum and Opinion, Memphis Street Academy Charter School at J.P. Jones v. School District of Philadelphia, No. 2:21-cv-01609 (E.D. Pa. July 2025)

Excerpt: Pages 45–47 discussing Article I, Section 29 of the Pennsylvania Constitution and the application of the federal equal-protection framework.

Source: ECF No. 105

(Excerpt provided for ease of reference; full opinion is available on the District Court docket.)

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MEMPHIS STREET ACADEMY CHARTER SCHOOL AT J.P. JONES *et al*,** *Plaintiffs,* | : | **CIVIL ACTION** |
| **v.** | : | **No. 22-02760** |
| **THE SCHOOL DISTRICT OF PHILADELPHIA** ***Defendant*.** | : | |

**MEMORANDUM**

**Kenney, J.** **July 14, 2025**

[redacted]

[redacted]

### 2. Article I, Section 29 of the Pennsylvania Constitution

Plaintiffs also assert Counts I and III under Article I, Section 29 of the Pennsylvania Constitution. Again, Plaintiffs and Defendant disagree on the legal standard the Court should apply to the Section 29 claims. *Compare* ECF No. 90 at 22–23 *with* ECF No. 93 at 37–38. Defendant argues that the analysis of and standards governing Section 29 are co-extensive to those regarding Article I, Section 26 of the Pennsylvania Constitution ("Section 26"). ECF No. 90 at 22-23. Plaintiffs argue that Section 29 should be interpreted consistent with Article I, Section 28 of the Pennsylvania Constitution ("Section 28"). ECF No. 93 at 37–38. Their disagreement is a distinction without a difference—the analytical framework of federal equal protection caselaw, though not necessarily its substance, is used to assess Section 28 and Section 29 claims.

Defendant argues the Court should construe claims arising under Sections 29 of the Pennsylvania Constitution to be co-extensive with the analysis and standards of the Article I, Section 26 of the Pennsylvania Constitution ("Section 26"), the equal protection clause. ECF No. 90 at 22-23. This approach would be consistent with the Court's previous analysis in *Sargent v.*

*School District of Philadelphia*. No. CV 22-1509, 2024 WL 4476555, at *8 n.5 (E.D. Pa. Oct. 11, 2024) ("The Court notes that Section 29 of the Pennsylvania Constitution (added May 18, 2021) has not yet been subject to any reported judicial construction, and that the Court finds no basis to find that Section 29—which expressly bars the denial or abridging of '[t]he equality of rights under the law' on the basis of 'race or ethnicity'—would be construed differently than the more generally worded Section 26, which does not mention race or ethnicity. Accordingly, the Court finds it appropriate, here, to also analyze Section 29 under the federal equal protection standards." (alteration in original) (citation omitted)). The framework used to assess a federal Equal Protection Clause challenge applies to Section 26. *Commonwealth v. Albert*, 758 A.2d 1149, 1151 (Pa. 2000) (finding that Article I, § 26 of the Pennsylvania Constitution is analyzed under the same standards that the Supreme Court uses in reviewing federal equal protection claims). Using the federal Equal Protection Clause framework, Plaintiffs' claims under Section 29 fail as a matter of law for the same reasons articulated for the claims under Title VI, described above. *See supra* Section III.B.1.

Plaintiffs argue that Section 29 should be interpreted to provide more protections than those guaranteed by Section 26, consistent with Pennsylvania's Equal Rights Amendment found in Article I, Section 28 of the Pennsylvania Constitution ("Section 28"). ECF No. 93 at 37–38. The text of Sections 28 and 29 mirror each other, changing only "sex" for "race or ethnicity."[26] In January of 2024, the Pennsylvania Supreme Court decided *Allegheny Reproductive Health Center v. Pennsylvania Department of Human Services*, in which it stated Section 28 "affords rights beyond those guaranteed by our equal protection provisions." 309 A.3d 808, 889 (Pa. 2024). In

[26] Section 28 provides, "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." Pa. Const. Art. I, § 28. Section 29 provides, "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the race or ethnicity of the individual." Pa. Const. Art. I, § 29.

*Allegheny Reproductive Health Center*, the Pennsylvania Supreme Court overruled its previous interpretation of Section 28 in *Fischer v. Department of Public Welfare*, 502 A.2d 114 (Pa. 1985), holding that strict scrutiny applies to a sex-based distinction, *Allegheny Reprod. Health Ctr.*, 309 A.3d at 891, the Pennsylvania Constitution secures the fundamental right to reproductive autonomy, *id.* at 917, and that the "penalty" analysis of *Fischer* in the context of Section 26 is replaced with a "position of neutrality with regard to citizens' exercise of their constitutional rights," *id.* at 945.

Plaintiffs do not discuss the meaningful differences between gender- and race-based classifications in federal equal protection caselaw that necessitated *Allegheny Reproductive Health Center*. At the federal level, the Supreme Court applies an intermediate level of scrutiny to gender-based classifications. *Id.* at 891. Pennsylvania's Equal Rights Amendment diverges from federal equal protection caselaw and provides a "near absolute view of the protections." *Id.* Unlike federal equal protection caselaw, in Pennsylvania, "when a statute is challenged as violative of Section 28, a sex-based distinction is presumptively unconstitutional, and it is the government's burden to rebut the presumption with evidence of a compelling state interest in creating the classification and that no less intrusive methods are available to support the expressed policy." *Id.* However, race-based classifications, both before and after *Allegheny Reproductive Health Center*,[27] are subject to a strict scrutiny analysis under federal equal protection caselaw. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 221 (1995). Plaintiffs also make no mention of the role *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022) had on the Pennsylvania

[27] In *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 491– 498 (1989), the Supreme Court held the Fourteenth Amendment requires strict scrutiny of race-based actions taken by state and local governments.

Supreme Court's analysis of its earlier caselaw in the context of gender-based classifications and rights.

Applying only the federal equal protection framework, rather than assuming that Section 29 is substantively co-extensive with Section 26 and its federal counterpart, *see Allegheny Reprod. Health Ctr.*, 309 A.3d at 944, the Court still holds Plaintiffs' claims under Section 29 fail as a matter of law for the same reasons articulated for the claims under Title VI, described above.[28]

## IV. CONCLUSION

For the reasons stated above, the Court grants Defendant's Motion for Summary Judgment (ECF No. 90) and denies Plaintiffs' Motion for Summary Judgment (ECF No. 89). An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**

[28] Plaintiffs point to Justice Wecht's concurrence in *Allegheny Reproductive Health Care* for the proposition that Section 29 provides for disparate impact protections. *See* ECF No. 93 at 38; ECF No. 102 at 11 n.8, 16. This Court will not extend disparate impact protections to Section 29 when the majority in *Allegheny Reproductive Health Center* did not do so in the context of Section 28.

**EXHIBIT B**

---

Memorandum and Opinion, Memphis Street Academy Charter School at J.P. Jones v. School District of Philadelphia, No. 2:21-cv-01609 (E.D. Pa. Nov. 2022)

Excerpt: Pages 2–4 describing the 2018 Charter and renewal process.

Source: ECF No. 30

(Excerpt provided for ease of reference; full opinion is available on the District Court docket.)

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MEMPHIS STREET ACADEMY CHARTER SCHOOL AT J.P. JONES *et al*,**<br>***Plaintiffs,*** | : | **CIVIL ACTION** |
| **v.** | : | **No. 22-02760** |
| **SCHOOL DISTRICT OF PHILADELPHIA *et al*,**<br>***Defendants.*** | : | |

**<u>MEMORANDUM</u>**

**KENNEY, J.** **November 29, 2022**

Before the Court is Defendants' Motion to Dismiss the Amended Complaint for Failure to State a Claim (ECF No. 13).

[redacted]

On July 15, 2022, Plaintiffs MSA and individual Plaintiffs[1] brought their initial Complaint against Defendant SDP primarily to prevent the closure of its charter school and alleging violations of Title VI of the Civil Rights Act of 1964, Every Student Succeeds Act, the Fourteenth Amendment of the Constitution, the Pennsylvania Constitution, and Pennsylvania Law. ECF No. 1. On August 11, 2022, Plaintiffs filed an Amended Complaint adding Defendants employed by the SDP or the Philadelphia Board of Education (collectively "individual Defendants").[2] ECF No. 7. In their Amended Complaint, Plaintiffs allege violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 200d; Every Student Succeeds Act, 20 U.S.C. ch. 28 §§ 1001, et seq; the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution; 42 U.S.C. § 1983; Article I, Sections 11, 14, 26, 29 of the Pennsylvania Constitution, Pa. Const. art. I, §§ 11, 14, 26, and 29, and Pennsylvania state law. *Id*. ¶ 2. Additionally, Plaintiffs allege the individual Defendants, acting under color of Pennsylvania law, subjected Plaintiffs to unlawful discrimination and deprived them of due process and equal protection rights. *Id*. ¶ 3. Plaintiffs seek injunctive and declaratory relief.

In 2012, MSA was granted an initial charter of five years. ECF No. 7 ¶ 37. In 2017, MSA applied for renewal of its charter. *Id*. ¶ 41. Plaintiffs outline the alleged process for reviewing a school's charter. The SDP Charter Schools Office is purportedly responsible for conducting performance reviews of charter schools. ECF No. 7 ¶¶ 27-29. The Charter Schools Office uses

---

[1] Plaintiffs Patrice Rogers, Nicauris Estevis, and Jennifer Bermudez filed suit on their own behalf and on behalf of their minor children who are students at MSA.

[2] The individual Defendants are Tony B. Watlington, Superintendent of the SDP, Joyce Wilkerson, President of the Philadelphia Board of Education, Leticia Egea-Hinton, Vice-President of the Philadelphia Board of Education, Sarah Ashley-Andrews, member of the Philadelphia Board of Education, Julia Danzy, member of the Philadelphia Board of Education, Chau Wing Lam, member of the Philadelphia Board of Education, Mallory Fix Lopez, member of the Philadelphia Board of Education, Lisa Salley, member of the Philadelphia Board of Education, Reginald Streater, member of the Philadelphia Board of Education, Cecelia Thompson, member of the Philadelphia Board of Education, and Peng Chao, Acting Chief of the SDP's Charter Schools Office. ECF No. 7.
The Named Defendants are sued in their official and individual capacity.

an evaluation framework, referred to as the Renewal Framework, that consists of standards in academic performance, operational compliance, and financial health. ECF No. 7 ¶¶ 30-31. Plaintiffs allege that the Charter Schools Office will recommend for five-year renewal schools that approach or meet their standards in those three areas. *Id*. ¶ 32. Schools who do not satisfy the Renewal Framework in one or more area will be considered for nonrenewal. *Id*.

In 2018, the Charter Schools Office applied the Renewal Framework to MSA and found the school had failed to meet the academic success standard. *Id*. ¶ 42. Despite that failure to meet the criteria for charter schools, MSA negotiated and signed a new charter that included specific academic conditions and a clause to surrender its charter if these conditions were not met. *Id*. ¶¶ 43-44. In 2021, MSA applied for renewal of its charter and again failed to meet the academic success standard of the Renewal Framework. *Id*. ¶¶ 52, 54. The Charter Schools Office allegedly reported to the Philadelphia Board of Education that MSA had triggered its Surrender Clause. *Id*. On June 23, 2022, the Philadelphia Board of Education approved the recommendation and invoked the Surrender Clause in MSA's charter. The Philadelphia Board of Education then directed MSA to forfeit its charter and close by June 30, 2023. *Id*. ¶ 56. MSA was instructed to notify SDP of its intent to comply with the Surrender Clause by July 15, 2022. *Id*.

The Renewal Framework should not be the criteria for charter renewal, Plaintiffs allege, because it is racially biased against minorities and English Language Learners. *Id*. ¶¶ 33-36. According to reports generated by the Charter Schools Office, the student population at MSA from 2020 to 2021 had a higher percentage of Hispanic and African American or black students than the general student population of the SDP. *Id*. ¶¶ 59-60. Plaintiffs claim that the SDP disproportionately selects nonrenewal or revocation of charters from schools that have higher percentages of racial minorities. *Id*. ¶ 64. Since Hispanic and African American or black students

underperform on academic success metrics, which constitute one of only three criteria in the Renewal Framework, Plaintiffs allege that the Renewal Framework is racially biased. *Id*. ¶¶ 68-74. Plaintiffs also point out that racial demographics are not a factor in evaluating a school's charter. MSA, according to Plaintiffs, helps students performing below grade level at SDP public schools and that the Renewal Framework fails to account for demonstrated improvement in academic growth. *Id*. ¶¶ 76-80. Plaintiffs also claim that the Renewal Framework fails to account for English Language Learners and students with disabilities. *Id*. ¶¶ 91-97.

Plaintiffs assert that the closure of MSA also violates the Every Student Succeeds Act ("ESSA"). *Id*. ¶ 98. States that receive federal funding under the ESSA must develop certain practices that include identifying schools in need of support. *Id*. ¶ 100. Plaintiffs allege that the ESSA does not recommend closure of a school until it has failed to meet certain exit criteria after four years, and MSA's closure would violate the ESSA. *Id*. ¶¶ 106, 109.

Plaintiffs further claim that revocation of MSA's charter violates public interest in fair and equitable education because, *inter alia*, the Renewal Framework is discriminatory, and SDP has no plan for MSA students post-closure. *Id*. ¶¶ 116, 117-120. SDP is also attempting, according to Plaintiffs, to impose an illegal and unenforceable agreement by triggering the Surrender Clause in MSA's charter. *Id*. ¶¶ 122-124.

Defendants' move to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted. ECF No. 13. Procedurally, Defendants seek to dismiss the claims against the individual Defendants in their official capacities as duplicative and in any capacity due to qualified immunity, as well as the claims brought by the individual Plaintiffs for lack of standing. Defendants also seek to dismiss all claims for failure to include sufficient facts beyond mere speculation or the mere possibility of misconduct. Furthermore, Defendants allege that the

complaint is either without appropriate statutory support or was brought inappropriately under 42 U.S.C. § 1983. Finally, Defendants assert that the Surrender Clause in the 2017 Charter is valid as a matter of law and precludes MSA's claims of due process violations.

On September 26, 2022, Plaintiffs filed their Response in Opposition, while acknowledging that some of their claims are insufficiently plead. ECF No. 16. On October 11, 2022, Defendants filed their Reply reiterating their positions in the motion to dismiss and responding directly to some of Plaintiffs' arguments in its Response. ECF No. 28. On October 20, 2022, Plaintiffs filed a Sur-Reply addressing the scope of the Surrender Clause, standing under Section 1983, and brief arguments related to the Title VI claim, discrimination claim, and public interest. ECF No. 29.

[redacted]